UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JOSEPH D. DONOVAN,

       Petitioner,

                                 No. 1:22-cv-11459-FDS

v.

MASSACHUSETTS PAROLE BOARD,

       Respondent.

## PETITIONER'S MEMORANDUM OF LAW

This memorandum of law is submitted at the request of the Court concerning the question of whether the Petitioner's submission is a second or successive petition requiring pre-authorization from the First Circuit Court of Appeals ("Appeals Court") under 28 U.S.C.§ 2244(b). For the reasons set forth herein Petitioner's submission is not a second or successive petition requiring pre-authorization where the Massachusetts Supreme Judicial Court ("SJC") changed Petitioner's original sentence after the submission of his first habeas petition resulting in a new and intervening judgment.

1

## BACKGROUND

### I.     TRIAL, CONVICTION AND FIRST PETITION FOR WRIT OF HABEAS CORPUS

Mr. Donovan was indicted in October 1992 for the first-degree felony murder and armed robbery of Yngve Raustein and the armed robbery of Arne Fredheim.[1]  The charges stemmed from an incident that occurred in Cambridge on September 18, 1992.  The Commonwealth alleged on that day seventeen-year-old Mr. Donovan and two co-venturers (eighteen-year-old Alfredo Velez, and a fifteen-year-old juvenile), together robbed Mr. Raustein and Mr. Fredheim, during which the juvenile stabbed and killed Mr. Raustein.  Although Mr. Donovan did not kill anyone, nor did he have the actual malice/intent to kill anyone he was charged with first degree murder under Massachusetts' joint venture felony murder doctrine. In 1993, Mr. Donovan was convicted on all counts and sentenced to life without the possibility of parole. In 1996, the SJC affirmed Mr. Donovan's convictions on direct review.  *Commonwealth v. Donovan*, 422 Mass. 349 (1996).

Twenty years after Mr. Donovan's conviction, in 2013, the SJC held that Massachusetts' common-law felony murder rule led to convictions that were "not consonant with justice," and so narrowed the rule prospectively so that to convict a defendant of felony murder, the Commonwealth must prove a defendant had actual malice. *See Commonwealth v. Brown*, 477

---

[1] Except where otherwise noted, the facts are taken from the Middlesex Superior Court's decision denying Mr. Donovan's Rule 30(b) motion. References beginning with an "A" and "SA" are to the Appendix and Sealed Appendix submitted with the Petitioner's application and motion to submit a second or successive habeas corpus petition with the Court of Appeals for the First Circuit which were then transferred to the District Court. See docket entry #1.

Mass. 805, 825 (2017) (Gants, C.J., concurring for a majority of the court).  Unfortunately for Mr. Donovan, this ruling was not applied retroactively.

In May 1997 Mr. Donovan filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court in Massachusetts. A0658 – A0669.  The grounds for the petition were the failure of the trial court to instruct the jury on the lesser included offense of involuntary manslaughter and the ineffective assistance of counsel in requesting this instruction. *Id*. After hearing the district court judge accepted the magistrate's decision to deny the petition on August 26, 2002.  A0751 – A0758.

## II.    RULE 30 MOTION AND PAROLE

In June 2012 the Supreme Court handed down its ruling in *Miller v. Alabama*, 567 U.S. 460 (2012), holding that it was cruel and unusual punishment to sentence a juvenile to life without the possibility of parole.  After the *Miller* ruling Mr. Donovan filed a M. R. Crim. P. 30 motion for a new trial and/or resentencing and a motion to correct his sentence.  A0007.

Mr. Donovan's original Rule 30 motion was revised as new evidence of injustice was discovered. In Mr. Donovan's second revised version of the original motion Mr. Donovan argued he is entitled to a new trial for several reasons including that: (1) newly discovered evidence from trial witness Arne Friedheim, the juvenile and Velez casts doubt on the justice of the defendant's conviction; (2) the Commonwealth failed to disclose exculpatory evidence; (3) newly discovered evidence regarding adolescent brain development casts doubt on the ability of the defendant and the juvenile to form the requisite criminal intent; (4) the defendant's conviction for felony murder by joint venture was a legal impossibility; and (5)

3

the defendant's trial and appellate attorneys were ineffective. A0028. Mr. Donovan also sought dismissal of the charges based on the alleged discovery violations and alleged prosecutorial misconduct. *Id.*

In December 2013, the Massachusetts Supreme Judicial Court followed the *Miller* decision with its own ruling on parole for juveniles in *Diatchenko v. District Attorney for Suffolk District*, 466 Mass. 655 (2013) (*Diatchenko I*). Following the *Diatchenko I* decision Mr. Donovan was allowed a parole hearing in April 2014 and in August 2014 Mr. Donovan was granted parole subject to conditions. After successfully completing certain requirements, Mr. Donovan was released from his incarceration to a long-term residential program in early 2016 after nearly 24 years in a prison cell for a conviction that is not consonant with justice. *See Exhibit A attached.*

In October 2017, the Superior Court denied relief on all Mr. Donovan's new trial arguments. A0060.

## III.   MASSACHUSETTS "GATEKEEPER" PETITION - M.G.L. c. 278, s. 33E

In November and December 2017, Mr. Donovan timely appealed the motion judge's decision to the Appeals Court, A0061-0063, and filed a Petition For Leave To Appeal Pursuant To G.L. c. 278 33E. A084 – A0876. On July 3, 2019, a single justice of the SJC issued a memorandum of decision and order compounding the mistakes made by the motion judge and applied the wrong legal standards, ignored, or misstated pertinent facts, and denied Mr. Donovan's petition focusing only on two of Mr. Donovan's several arguments. A0789 – A0804.

Mr. Donovan filed a motion for reconsideration asking the court to consider all of Mr. Donovan's arguments pointing out certain issues the single justice blatantly ignored. A0767 – A0788.

On December 2, 2019, the same single justice issued an order that the motion for reconsideration be denied. A0762 – A0766.   In his decision the single justice stated, "To the extent that the petitioner made any other arguments not addressed here, that does not mean, as the petitioner contends, that they have not been considered, but, rather, that they have been rejected without need for further discussion." A0765 n.1.

## IV.   PETITIONER'S MOTION FOR PERMISSION TO FILE HABEAS PETITION

Mindful of the District Court's decision in *James v. Goguen*, 424 F.Supp.3d 154 (2019), in December 2020, the Petitioner filed a motion and application with the Appeals Court to file a second successive petition along with a memorandum of law and appendix, on different grounds, per 28 U.S.C. § 2244(b)(2)-(3) asking the Appeals Court to authorize defendant-petitioner to file for writ of habeas corpus with the U.S. District court. *See Exhibit B attached*. The Petitioner claimed deprivation of various constitutional rights stemming from errors made by the Massachusetts trial court and the SJC during the consideration of and in denying petitioner's Second Revised Motion Pursuant to M. R. Crim. P. 30 For A New Trial, Dismissal of the Charges and/or Resentencing and/or an appeal therefrom and in not allowing an appeal therefrom under M.G.L. c. 278 § 33E.   For the reasons set forth in that motion, petitioner stated that the errors committed by the Massachusetts trial and SJC and the grounds upon which he submitted that petition satisfied the requirements of 28 U.S.C. § 2244(b). Those grounds include, among others, various violations of Mr. Donovan's Constitutional rights including under the 5th, 6th, 8th and 14th amendments related to both newly discovered exculpatory evidence and exculpatory evidence the Commonwealth failed to disclose to the Petitioner in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Ex.B.*

On September 8, 2022, the Appeals Court entered a judgment raising the question of whether it had subject matter jurisdiction over Petitioner's motion and application. *See Exhibit C attached.* The Appeals Court stated that because Petitioner's original judgment was constructively amended by the state and parole board from life without the possibility of parole to life with the possibility of parole without recourse to a court this amendment could implicate the principles discussed by the U.S. Supreme Court in *Magwood v. Patterson*, 561 U.S. 320 (2010). *Ex. C.* Considering this, the Appeals Court transferred the case to the U.S. District Court for the District of Massachusetts ("District Court"), "so that the court might, in the first instance, determine whether Donovan's claims require pre-authorization." *Ex. C.* The Appeals Court directed the District Court to transfer the case back to the Appeals Court or dismiss the petition if it determines that claims may not be entertained without pre-authorization. *Ex. C.* The Appeals Court further instructed that the Petitioner may seek a review of the District Court's ruling by initiating an appeal with the Appeals Court. *Ex. C.* On March 8, 2023, the District Court requested that the parties brief the issue presented to the District Court by the Appeals Court.

## ARGUMENT

I.    **A New Sentence Results In A New Judgment That Is Not Second Or Successive Under 28 U.S.C. § 2244(b) Where The New Judgment Is Intervening Between Two Habeas Petitions**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the filing and adjudication of federal habeas corpus petitions. A federal habeas petition may be filed by a person in state custody who wishes to challenge his criminal conviction and sentence. 28 U.S.C. § 2254(a). There are strict procedural requirements for the filing of a federal habeas petition including that a petition may not be a "second or successive" petition unless certain requirements are met, and permission is obtained from the appropriate federal Court of Appeals. 28 U.S.C. § 2244(b).   The Supreme Court has declined to hold that "second or successive" means all habeas petitions filed "second or successively in time." *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007). Rather, "second or successive" is a "term of art." *Magwood v. Patterson*, 561 U.S. 320, 332 (2010).

In *Magwood*, the petitioner filed a habeas petition after being sentenced to death. *Id.* at 324-26. The district court upheld the conviction but vacated the sentence upon finding the trial court failed to consider mitigating circumstances during sentencing. Following a resentencing proceeding, the petitioner was again sentenced to death.  *Id.* at 326. The petitioner filed a second habeas petition challenging the new death sentence on the grounds that he had not had fair warning at the time of the offense that his conduct could warrant a death sentence and the district court granted the petition. *Id.* at 327-28. The Eleventh Circuit reversed, finding the habeas petition to be second or successive because the claim could have been raised in his initial petition, as the same error had previously occurred. *Magwood v. Culliver*, 555 F.3d 968, 975-76 (11ᵗʰ Cir. 2009). The Supreme Court reversed holding that a judgment is comprised of both the conviction and the sentence and therefore where a

defendant is resentenced "there is a new judgment intervening between the two habeas petitions, …

[and] an application challenging the resulting new judgment is not 'second or successive' at all." *Id.*

at 341-42.  In other words, a habeas petition cannot be "second or successive" where it challenges a

new judgment.  In rejecting a claims-based approach to determining if a petition is "second or

successive" the Court noted that "[a]n error made a second time is still a new error." *Id.* at 339.

## II.     The Petitioner Received a New Sentence After His Initial Habeas Petition

### a.  A Sentence Is New Where There Is Any Change To the Original Sentence

Accordingly, the question here is whether Mr. Donovan received a "new" judgment between

the time he filed his initial habeas petition in 1997 and the time he filed the instant second habeas

petition. Since *Magwood* various circuit courts have opined on when a judgment is considered "new."

For example, when a prisoner is resentenced but receives the same punishment as in their original

sentence, a longer sentence than the original sentence, a change to sentence enhancement, a

recalculation of presentence credits, the addition of post-release control or a different minimum term

of imprisonment the prisoner has a "new" "judgment." *Magwood supra* (where sentence was the

same in each habeas petition (i.e. death) the Supreme Court held that it was a new sentence that

resulted in a new judgment); *In re* Brown, 594 F. App'x 726, 726-27, 729 (3d Cir. 2014) (holding

that a petitioner who was originally sentenced to life in prison and received the same sentence after

his resentencing proceedings had a new judgment); *Blanco v. Sec'y, Fla. Dep't of Corr.*, 688 F.3d

1211, 1240 (11th Cir. 2012) (holding that a judgment can be an "intervening judgment" even if it

imposes the same sentence as the first judgment); *Wentzell v. Neven*, 674 F.3d 1124, 1125-27 (9th

Cir. 2012) (holding that resentencing that deletes part of the sentence and reissues the otherwise exact

same sentence resets the habeas counter); *King v. Morgan*, 807 F.3d at 156. (defendant was

resentenced and received a longer minimum sentence than he had originally, and the court found this

to be a "new" judgment); *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1281 (11th Cir. 2014) (defendant's minimum sentenced reduced from twenty to ten years); *In re Weathersby*, 717 F.3d 1108, 1111 (10th Cir. 2013) (per curiam) (court vacated the state judgment that was the basis for a sentencing enhancement); *Stewart v. United States*, 646 F.3d 856, 865 (11th Cir. 2011); *Gonzales v. Sherman*, 873 F.3d 763, 769-770 (9th Cir. 2017) (reviewing California state law to determine that the recalculation of presentence credits led to a change in the sentence and finding that there was a new judgment); *In re Stansell*, 828 F.3d 412, 414-20 (6th Cir. 2016) (where a petitioner's original sentence was changed from twenty years to life to twenty years to life plus five years of post-release control, there was a new custodial sentence and judgment). The correction of a clerical error in a judgment may not create a "new" judgment. *In re Lampton*, 667 F.3d 585, 588-89 (5th Cir. 2012); *In re Martin*, 398 F. App'x 326, 327 (10th Cir. 2010); *Patterson v. Sec'y. Fla. Dep't of Corr. (Patterson II)*, 849 F.3d 1321 (11th Cir. 2017)(en banc) (en banc Eleventh Circuit reversed the decision of a three judge panel of the Eleventh Circuit that the removal of chemical castration from petitioner's sentence was not a new judgment arguing that it was more akin to a clerical error). A procedural error resulting in a new identical sentence may result in a new judgment. *In re Brown*, 594 F. App'x 726, 729 (3d Cir. 2014) (per curiam) (sentence overturned because of a procedural flaw and the reentry of an identical sentence was more than a simple "mechanical correction of the docket" and constituted a new judgment). According to these decisions, any change to a prisoner's original sentence or an evaluation of a prisoner's original sentence resulting in the same sentence is a "new" sentence and thus a "new" judgment for purposes of *Magwood*.

### b.  The SJC Changed Petitioner's Sentence

#### i.  The Reasoning In *James v. Goguen* Is Suspect

While the Appeals Court has not ruled on the question of what constitutes a "new" judgment for purposes applying the principles of *Magwood*, the District Court addressed the issue in *James v. Goguen*, 424 F.Supp.3d 154 (2019). The *James* case is like the Petitioner's case in that both involve juveniles who were originally sentenced to life without the possibility of parole and whose sentences were changed to life with the possibility of parole after the SJC's decision in *Diatchenko I*. In *James* the petitioner filed a habeas petition with the District Court in accordance with 28 U.S.C. § 2254. *James* at 155-156. Like this case the petitioner argued that because his sentence was changed from life without the possibility of parole to life with the possibility of parole after his first habeas petition was filed, his second habeas petition in time was not "second or successive." *Id*. But the magistrate judge disagreed and held the petitioner did not receive a new sentence. *Id*.  Thus, the petition was "second or successive" and filed without pre-authorization. *Id*. at 157.  The District Court judge agreed with the findings of the magistrate judge, dismissed the petition, and denied the petitioner a certificate of appealability. *Id*. Where the legal issues in *James* are like the case at bar, the magistrate judge's legal analysis and the Trial Court's reliance on said analysis is flawed and contrary to the holdings in other circuits as to whether the Petitioner received a "new" sentence and thus a "new" judgment for purposes of applying *Magwood*.

As is explained below to argue that a petitioner's sentence is the same with the possibility of parole as his sentence without the possibility of parole is unsound.  If there were no difference, there would be no need for *Miller* nor *Diatchenko I* nor the hundreds of cases that followed those rulings. Simply compare a day in the life of Mr. Donovan while he was incarcerated in a maximum-security prison to a day in the life of Mr. Donovan after he was released from incarceration on parole as proof they are not the same sentence.

10

In *James*, the magistrate judge's decision took out of context certain language in *Montgomery v. Louisiana*, 577 U.S. 190 (2016) and *Diatchenko I*. While the *Montgomery* court did state in dicta that their decision does not require states to relitigate sentences or convictions and does not disturb the existing "convictions", it did so in the context of justifying the retroactive treatment of *Miller* as not imposing "an onerous burden" on states by pointing to a Wyoming statute that provided for parole eligibility for juveniles similar to the statutory scheme Massachusetts enacted after *Diatchenko I*. *Montgomery* at 212; *See Exhibit D attached*. The dicta is not instructive in the context of (and was not part of any legal analysis) of the applicability of *Magwood* especially where it refers to "convictions" and not judgments.

Similarly, the magistrate judge relied on language in *Diatchenko I* that the juvenile was not "entitled to be resentenced given that he was not improperly sentenced in the first instance, but was only denied the chance to be considered for parole." *Diatchenko I* at 674; *Ex.D, p.9*. The magistrate judge's reliance on this language is misplaced. The sentence referred to in *Diatchenko I* was the original sentence. In other words, the juvenile was not improperly sentenced at the time of his original sentencing per M.G.L. c. 265 s. 2 before the SJC declared the statute unconstitutional as applied to juveniles. Logically, where a defendant is sentenced under an unconstitutional statute, the defendant has been "improperly sentenced." *Id*. Nonetheless, again, the *Diatchenko I* court did not address the issue of whether the juvenile received a "new" sentence for purposes of *Magwood*.

### ii. The SJC Acted As The Sentencing Judge, Considered The Mitigating Factors Enumerated In *Miller* And Resentenced Petitioner

Like the petitioner in *James*, Mr. Donovan's original sentence was mandatory life in prison without the possibility of parole. The *Miller* court held that the imposition of a mandatory sentence

11

of life in prison without the possibility of parole on juveniles under the age of 18 at the time of their act is contrary to the prohibition against "cruel and unusual punishments" in the Eighth Amendment. *Miller* at 489. *Miller* did not set a complete bar on the imposition of a mandatory sentence of life in prison without the possibility of parole on juveniles.  Rather, *Miller* required a sentencing judge to consider the unique mitigating nature of juveniles and an individualized consideration of the circumstances of the juvenile and the crime before imposing this sentence. *Miller* at 489.  In other words, the imposition of this sentence was discretionary.  The SJC's decision in *Diatchenko I* made the *Miller* decision retroactive in Massachusetts. *Diatchenko I* at 666.  Exercising its inherent authority to "interpret [S]tate constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution", *Diatchenko I* at 668, the SJC removed the discretion afforded to sentencing judges by the Supreme Court and made a sentence of life with the possibility of parole mandatory stating that a sentencing judge could never, "with integrity" or "any reasonable degree of certainty", conclude at an individualized sentencing hearing determine that a sentence of life without the possibility of parole should be imposed on a juvenile. *Id*. at 669-70.  To do so "is strikingly similar, in many respects, to the death penalty… *Id* at 670.

To correct the constitutional sentencing mistake made in the Petitioner's original judgment and effectuate their sentencing decision the SJC struck the language in the fourth sentence of M.G.L. c. 265, § 2 regarding parole eligibility as applied to juveniles under the age of 18 at the time of their offense. *Diatchenko I* at 673. While the life sentence of imprisonment in the [S]tate for life remains in full force and effect, the statutory exception to parole eligibility no longer applies to those juveniles. *Id*. Similarly, the related exception to parole eligibility set forth in M.G.L. c. 127, § 133A no longer applied to those juveniles. Thus, those juveniles were eligible for parole "within sixty days

before the expiration of fifteen years of [a life] sentence. *Id.* At that time it would be the "purview of the Massachusetts parole board" to determine the suitability of those juveniles for parole.

The effect of *Diatchenko I* was that the SJC became the sentencing judge for the class of juveniles under the age of 18 convicted of first-degree murder, engaged in an analysis of the mitigating factors enumerated in *Miller* that a sentencing judge at the trial court level would have been instructed to consider, and determined that a sentence of life without the possibility of parole was not warranted for all juveniles including the Petitioner. Hence, the SJC resentenced the Petitioner as a member of the class of juveniles affected by their decision.

In *James*, instead of considering the substance of the SJC's decision in *Diatchenko I*, the magistrate judge emphasized unimportant procedural matters. The judge justified his holding because the petitioner did not have a new resentencing "hearing" and was not "issued" a new judgment. *Ex. D, p. 9*. More crucial than these ministerial issues is the import of the judicial action taken by the SJC resulting in the Petitioner receiving a new sentence. It is inconsequential that the sentencing hearing was not conducted by a trial or motion judge at the trial court level. Nor is it significant whether a procedural notation was made in the docket. The effect is the same. The Petitioner was resentenced. A "new judgment breaks the 'second or successive' chain such that a petition challenging a new judgment is not 'second or successive at all' … *irrespective of how the new judgment comes about*." *In re Greenwood*, 2022 WL 501393, (5th Cir. 2022)(emphasis added). "*Magwood* encompasses new judgments generated by other types of post-conviction relief." *Id.* "It does not matter how [a] new judgment was obtained." *Id.*

### iii.   Parole Eligibility Is Part Of A Sentence And Where The Petitioner's New Sentence Made Him Eligible For Parole It Also Granted Him Constitutionally Protected Liberty Interests That Did Not Previously Exist

In *James*, the magistrate judge stated that a new sentence granting the petitioner eligibility for parole did not alter his "judgment... authorizing the petitioner's confinement for life in prison." *Ex. D, p. 10*. Nonetheless, a new sentence granting a petitioner eligibility for parole does grant the petitioner new constitutionally protected liberty interests against confinement for life in prison that he did not have before his sentence was changed.

Parole eligibility or the lack thereof is part of any sentence. *Shepard v. Taylor*, 556 F.2d 648, 654 (2nd Cir. 1977); *United States v. Paskow*, 11 F.3d 873, 879 (9th Cir. 1993); *U.S. v. Stewart,* 468 F. Supp. 2d 261 (D. Mass. 2007); *Fender v. Thompson*, 883 F.2d 303 (4th Cir. 1989); *Montgomery v. Louisiana*, 577 U.S. 190 (2016) (trial court required to impose sentence of life without parole); *Miller v. Alabama*, 567 U.S. 460 (2012) (sentence of life without parole is disproportionate for vast majority of juvenile offenders); *Diatchenko I* at 661. Where a prisoner's sentence includes eligibility for parole he has a liberty interest with constitutional due process protections. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex et al*, 442 U.S. 1 (1979) (prisoners who are incarcerated and are eligible for parole have due process protections under the Constitution).   A juvenile in Massachusetts who is granted parole is given even more constitutionally protected liberty interests. Where "the meaningful opportunity to release through parole is necessary in order to conform [a] juvenile homicide offender's mandatory life sentence to the requirements of art. 26 [of the Massachusetts Constitution], the parole process takes on a constitutional dimension that does not exist for other offenders whose sentences include parole eligibility." *Diatchenko v. District Attorney*

*for Suffolk Dist.*, 471 Mass. 12, 19 (2015) (*Diatchenko II*). Regarding juveniles a parole hearing "is not available solely at the discretion of the State…it is constitutionally mandated, and as such, it requires certain protections not guaranteed in all postconviction procedures." *Id.* For example, in addition to a parole hearing a juvenile is entitled to counsel and funds to pay for counsel and expert witnesses as well as judicial review of parole decisions. *Id.* Even further, where a prisoner has been released from his prison cell on parole, he has an even greater liberty interest subject to protection. *Morrissey v. Brewer*, 408 U.S. 471, (1972) (because all prisoners released on parole have an interest in remaining free from incarceration, they have a liberty interest protected by the due process clause of the United States Constitution).

Accordingly, where parole eligibility is added to a juvenile prisoner's sentence the prisoner's liberty has been changed and he is now constitutionally entitled to a parole hearing, counsel, expert witnesses, and funds. It logically follows then that the prisoner's sentence has been changed and it is a "new" sentence and judgment under *Magwood*.

### iv. The SJC Admitted Petitioner Has A New Judgment

In addition to the above, by its own admission the SJC's decision to act as the sentencing judge for all juveniles changed the Petitioner's sentence and judgment from that of life without the possibility of parole for first degree murder to that of life with the possibility of parole for second degree murder. In *Commonwealth v. Watt*, 484 Mass. 742 (2020) the SJC held "[i]n effect, our holding [in *Diatchenkco I*] *reduced* the mandatory life sentence for juveniles convicted of murder in the first degree to the next-most severe sentence under the sentencing statute, a mandatory sentence of life with the possibility of parole after fifteen years, which was then the sentence for murder in the second degree." *Watt* at 754 (emphasis added).

15

### III.    Where The Petitioner Was Resentenced By The SJC His Application Is Not Second Or Successive And He May Challenge Any Aspect Of The New Judgment

Accordingly, for all the reasons state above, the Petitioner's sentenced was changed and is "new." *Magwood, supra*. Because a judgment is comprised of the conviction and the sentence when the Petitioner was resentenced the Petitioner also received a new judgment. *Magwood, supra*. In a criminal case, "[t]he sentence is the judgment," so a new or amended sentence results in a new judgment. *See Burton v. Stewart*, 549 U.S. 147, 156 (2007). "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937). The sentence that matters in a habeas case is the one "pursuant to" which an individual is currently held "in custody." *Magwood v. Patterson*, 561 U.S. 320 332 (2010). See also 28 U.S.C. § 2254(a), (b)(1). When a sentence is altered, there is a new judgment. *Burton* at 156. Because the Petitioner's new judgment occurred after his first habeas petition was filed Petitioner's second in time habeas petition is not a "second or successive" petition. *Magwood, supra*. So, where there is an intervening judgment "a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both." *Johnson v. United States*, 623 F3d 41, 46 (2d Cir. 2010). As a result, under *Magwood*, neither the fact that the Petitioner's claims could have been raised previously nor that the Petitioner challenges an unamended component of the judgment warrants dismissing his habeas petition as second or successive. *Id*. Subsequent habeas petitions must be interpreted "with respect to the judgment challenged and not with respect to the particular components of that judgment." *Id*. *See also Wentzell v. Neven*, 674 F3d 1124 (9th Cir 2012); *Insignares v. Secretary, Florida Department of Corrections*, 755 F3d 1273 (11th Cir 2014); *In Re Brown*, 594 Fed Appx 726 (3d Cir 2014); *In Re*

*Gray*, 850 F3d 139 (4th Cir 2017); *Lesko v. Secretary Pennsylvania Department of Corrections*, 34 F.4[th] 211, 224 (3rd Cir. 2022).

## IV.    Conclusion

For all the reasons stated above the Petitioner's application is not "second or successive" under 28 U.S.C § 2244(b) and does not require pre-authorization from the Appeals Court.

<div style="margin-left:40%;">

Respectfully submitted,
Joseph D. Donovan, Petitioner
By his attorney


*/s/ Paul K Donovan*
Donovan Legal PLLC
55 SE 2nd Avenue
Delray Beach, FL 33444
Ph: 561-666-6022
Fax: 833-829-9993
Email: Paul@Donovan.Law
BBO# 630736

</div>

Dated: April 13, 2023

CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I electronically filed the foregoing document with the United States District Court of Massachusetts in Boston by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Massachusetts Parole Board

Paul K. Donovan
Attorney for Petitioner

*/s/ Paul K Donovan*
Donovan Legal PLLC
55 SE 2nd Avenue
Delray Beach, FL 33444
Ph: 561-666-6022
Fax: 833-829-9993
Email: Paul@Donovan.Law
BBO# 630736