UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DONOVAN, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> MASSACHUSETTS PAROLE BOARD, ) <br> ) <br> Respondent. ) <br> ) | Civil Action No. <br> 22-11459-FDS |

**MEMORANDUM AND ORDER**

**SAYLOR, C.J.**

Joseph Donovan filed an application with the United States Court of Appeals for the First Circuit seeking permission to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b)(2)-(3). The Court of Appeals transferred the case to this court to determine whether his claims require pre-authorization. For the reasons set forth below, the Court concludes that his claims do require pre-authorization, and the case will therefore be returned to the Court of Appeals.

I.  **Background**

   A.  **Factual Background**

On September 18, 1992, 17-year-old Joseph Donovan and two of his companions encountered a pair of Massachusetts Institute of Technology students while walking along Memorial Drive in Cambridge. *Commonwealth v. Donovan*, 422 Mass. 349, 350 (1996); (Docket No. 1, Appendix Filed with Petitioner's Application ("App.") at 790). Donovan punched one of the students in the face, knocking him to the ground. *Donovan*, 422 Mass. at

351.  While that student was down, one of Donovan's companions fatally stabbed him in the heart.  *Id.*  Both victims had their wallets stolen.  *Id.*

Following a jury trial, Donovan was convicted of first-degree murder pursuant to the felony-murder doctrine under Massachusetts law.  *Id.* at 350.  He received what was then the mandatory sentence of life in prison without the possibility of parole.  (App. at 792).  He thereafter filed an unsuccessful motion for a new trial, and in 1996, the Massachusetts Supreme Judicial Court affirmed his conviction.  (*Id.* at 793).

In 1997, Donovan filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2254, which was denied in 2002.  *Donovan v. Duval*, No. 97-11275-MLW (D. Mass. Aug. 26, 2002).  He did not appeal that decision.  (App. at 662).

In June 2012, the Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  *Miller v. Alabama*, 567 U.S. 460, 465 (2012).

In June 2013, Donovan filed a motion in state court for a new trial, resentencing, or dismissal and a motion to correct his sentence.  (App. at 7).

In December 2013, the SJC held that "the Supreme Court's decision in *Miller* has retroactive application to cases on collateral review."  *Diatchenko v. District Att'y for Suffolk Dist.*, 466 Mass. 655, 658 (2013).  The Supreme Court later reached the same conclusion.  *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

Following the decision in *Diatchenko*, Donovan was afforded a parole hearing, and after a 2014 hearing before the Massachusetts Parole Board, he was granted parole.  (App. at 21).

In 2017, the Superior Court denied Donovan's motions for a new trial, resentencing, or dismissal of the charges.  (*Id.* at 60).  He filed an application to appeal the decision pursuant to

2

Mass. Gen. Laws ch. 278, § 33E, which was denied by a single justice of the SJC in 2019. (*Id.* at 804).

**B.    Procedural History**

In 2020, Donovan filed an application with the United States Court of Appeals for the First Circuit seeking permission to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b)(2)-(3). On September 8, 2022, the Court of Appeals transferred the case to this court to determine whether his claims require pre-authorization.

**II.    Analysis**

A petitioner seeking to file a "second or successive" habeas corpus petition must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). "Although Congress did not define the phrase 'second or successive,' . . . it is well settled that the phrase does not simply 'refe[r] to all § 2254 applications filed second or successively in time.'" *Magwood v. Patterson*, 561 U.S. 320, 331-32 (2010) (alteration in original) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)). In *Magwood*, the Supreme Court held that where "there is a 'new judgment intervening between the two habeas petitions,' an application challenging the resulting new judgment is not 'second or successive' at all." *Id.* at 341-42 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)).

The question in this case is whether the striking of parole ineligibility from Donovan's 1993 sentence constitutes an intervening judgment under *Magwood*. That issue is not one of first impression in this district. *See James v. Goguen*, 2019 WL 6130669, at *6 (D. Mass. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 6130672 (D. Mass. Oct. 24, 2019) (holding that the striking of parole ineligibility from a defendant's life sentence did not constitute an intervening judgment for purposes of *Magwood*).

3

In *James*, the petitioner had been convicted of murder in the first degree for a killing that he committed when he was seventeen. *James*, 2019 WL 6130669, at *1. The SJC affirmed his conviction, and in 2002, his first § 2254 petition was denied. *Id.* Following *Diatchenko*, he filed a subsequent habeas petition. *Id.* at *2-3. After a detailed assessment of the record and relevant case law, the court concluded that his habeas petition was "second or successive" for purposes of 28 U.S.C. § 2244(b). *Id.* at *5-6.

In coming to its conclusion, the *James* court carefully reviewed decisions of the Supreme Court and the SJC. *Id.* In *Montgomery*, the Supreme Court emphasized that giving *Miller* retroactive effect "does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, *rather than by resentencing them*." *Montgomery*, 577 U.S. at 212 (emphasis added). The court further observed that "[e]xtending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions." *Id.*

Similarly, in *Diatchenko*, the SJC explained that a juvenile sentenced to life without the possibility of parole was "not entitled to be resentenced given that he was not improperly sentenced in the first instance, but only was denied the chance to be considered for parole." *Diatchenko*, 466 Mass. at 674. Instead, his "life sentence remains in full force and effect, but the statutory exception to parole eligibility no longer applies to him." *Id.* at 673.

This Court agrees with the reasoning of *James* and will follow it here. The "judgment in a criminal case means sentence. The sentence is the judgment." *Burton*, 549 U.S. at 156 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)). In 1993, petitioner was sentenced to life in prison. Neither *Montgomery* nor *Diatchenko* disturbed that sentence. *See Montgomery*,

4

577 U.S. at 212; *Diatchenko*, 466 Mass. at 673-74.  Accordingly, there was no intervening judgment between petitioner's 1997 habeas petition and the one he seeks to file today, and his claims therefore require pre-authorization from the Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3).

Petitioner, however, asserts that *James* was wrongly decided.  He contends that many courts have determined that an intervening state-court action—purportedly similar in kind to that at issue in *Diatchenko*—creates a new judgment for purposes of *Magwood*.  However, the cases he cites are distinguishable because they, unlike *Diatchenko*, involved a new sentence.  *See, e.g.*, *In re Brown*, 594 Fed. Appx. 726, 729 (3d Cir. 2014) (describing a state trial court that "resentenced [the petitioner] to life imprisonment without parole on his first degree murder conviction"); *Lesko v. Secretary Pennsylvania Dep't of Corrs.*, 34 F.4th 211, 225 (3d Cir. 2022) ("[The petitioner] was resentenced as to all counts of his conviction . . . ."); *In re Gray*, 850 F.3d 139, 142 (4th Cir. 2017) (describing a petitioner who was "resentenced to life in prison following a successful habeas petition" and thereafter challenged "his underlying, undisturbed conviction in a second-in-time habeas petition"); *In re Greenwood*, 2022 WL 501393, at *1 (5th Cir. Feb. 18, 2022) ("[T]he state court entered an 'Agreed Order & Judgment' . . . vacating [the petitioner's] original sentence and resentencing him to life with eligibility for parole."); *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015) (describing a petitioner who had been "resentenced" by the state trial court); *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016) (state trial court "partially resentenced" the petitioner to add a term of post-release control); *Wentzell v. Neven*, 674 F.3d 1124, 1125 (9th Cir. 2012) ("[T]he state court entered an amended judgment of conviction."); *Gonzalez v. Sherman*, 873 F.3d 763, 770 (9th Cir. 2017) (noting that the state trial court's "recalculation of presentence credits necessarily led to a change in the sentence and

judgment"); *In re Weathersby*, 717 F.3d 1108, 1111 (10th Cir. 2013) (describing a petitioner whose convictions were vacated by a state court following the conclusion of his previous § 2255 proceedings); *Insignares v. Secretary, Fla. Dep't of Corrs.*, 755 F.3d 1273, 1275 (11th Cir. 2014) ("[R]esentencing by the state judge resulted in a new judgment . . . ."). Because the state trial court did not vacate petitioner's sentence or resentence him following *Diatchenko*—indeed, the state court denied a motion to resentence him in 2017—cases involving resentencing are inapposite.

Petitioner further contends that *Commonwealth v. Watt*, 484 Mass. 742 (2020), requires a different result. According to petitioner, in *Watt* the SJC stated that in *Diatchenko* it acted as the sentencing court, considered the mitigating factors set forth in *Miller*, and resentenced the defendant as a member of the class of juveniles affected by its decision. *See Watt*, 484 Mass. at 753-54 (observing that *Diatchenko* "reduced the mandatory life sentence for juveniles convicted of murder in the first degree to the next-most severe sentence under the sentencing statute, a mandatory sentence of life with the possibility of parole after fifteen years, which was then the sentence for murder in the second degree"). However, as noted, a juvenile sentenced to life without the possibility of parole was "not entitled to be resentenced" under *Diatchenko*, but rather became parole-eligible. *See Diatchenko*, 466 Mass. at 674. *Watt* did not disturb that conclusion, nor *Diatchenko*'s holding that the life sentences themselves remained "in full force and effect." *See id.* at 673.

Finally, petitioner contends that his parole confers a liberty interest that is protected by the Due Process Clause of the United States Constitution. However, he does not assert that his due-process rights were violated during any of his parole proceedings following *Diatchenko*. Instead, he contends that his newly recognized liberty interest under the United States and

Massachusetts Constitutions necessarily means that his sentence was changed. That is not correct. *Diatchenko* plainly established that although "the statutory exception to parole eligibility no longer applies to him," petitioner's "life sentence remains in full force and effect." *See id.*

Accordingly, the striking of parole ineligibility from petitioner's 1993 life sentence did not constitute an intervening judgment under *Magwood*. This Court therefore cannot consider his petition without an order from the Court of Appeals authorizing it to do so.

### III. Conclusion

For the foregoing reasons, the case is transferred back to the United States Court of Appeals for the First Circuit for further proceedings.

**So Ordered.**

Dated: September 15, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court